# 23-251

*To Be Argued By:*
JOHN R. QUINN

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

CHARLES ANTHONY GIOVINCO,

*Petitioner-Appellant,*

—against—

TIMETHEA PULLEN, WARDEN,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## REPLY BRIEF FOR PETITIONER-APPELLANT

JOHN R. QUINN
LAW OFFICE OF JOHN R. QUINN
1384 Gardiner Drive
Bay Shore, New York 11706
(646) 263-7250

*Attorneys for Petitioner-Appellant*

## **TABLE OF CONTENTS**

Table of Authorities……………………………………………………………...ii

Argument …………………………………………………………………….. 1

REPLY
POINT I

      RESPONDENT DOES NOT DISPUTE THE DISPOSITIVE
      ANALYTICAL CONCESSION FLAGGED BY GIOVINCO OR THE
      RELATED STATUTORY FACTS REQUIRING REVERSAL . . . . . . . . . . .1

      A.    Respondent's Loud Silence on *Chevron* . . . . . . . . . . . . . . . . . . . . . 1

      B.    Respondent Does Not Dispute the Accuracy of Giovinco's
             Account of the Two Other Sentence-Reduction Programs …………..3

      C.    Respondent Does Not Dispute Giovinco's Critique of the Other
             Reported §3632(d)(4)(D) District Court Decision in this Circuit……6

      D.    Respondent Misreads this Court's
             Decision in *United States v. Martin* …………………………………7

      E.    The Raw Materials for Bona Fide Statutory
             Interpretation—Text and Context—Are Not Disputed ……………..10

REPLY
POINT II

      DETERMINING ELIGIBILITY AS CONGRESS INTENDED,
      BY DISCRETE OFFENSE, WOULD NOT BE IMPRACTICABLE……..11

Conclusion …………………………………………………………………..12

Certificate of Compliance……………………………………………….........13

i

# TABLE OF AUTHORITIES

**Cases:**

<u>Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.</u>,
     467 U.S. 837 (1984)………………………………………………………..*passim*

<u>Moreno v. Ives</u>, 842 F. App'x 18 (9th Cir. 2020)………………………………..6

<u>Peyton v. Rowe</u>, 391 U.S. 54 (1968)…………………………………………9-10

<u>Pulsifer v. United States</u>, 601 U.S.__, 144 S. Ct. 718 (2024) ……………………..1

<u>United States v. Martin</u>, 974 F.3d 124 (2d Cir. 2020)……..……………………...7-9

<u>Whaley v. Pliler</u>, 22-CV-4680, 2023 WL 7243714
     (S.D.N.Y. Nov. 3, 2023), <u>report</u> <u>and</u> <u>recommendation</u>
     <u>not</u> <u>yet</u> <u>adopted</u>..…………………………………………………………….6

<u>Williams v FCI Berlin</u>, 22-CV-564, 2023 WL 5961688
     (D.N.H. Aug. 1, 2023), <u>report</u> <u>and</u> <u>recommendation</u>
     <u>adopted</u>, 2023 WL 5959740 (D.N.H. Sept. 13, 2023)…………………….5-6

**Statutes**

18 U.S.C. § 3584(c)……………………………………………………….....*passim*

18 U.S.C. § 3632(d)(4)(D)..………………………………….................. *passim*

**REPLY**
**POINT I**

**RESPONDENT DOES NOT DISPUTE THE DISPOSITIVE ANALYTICAL CONCESSION FLAGGED BY GIOVINCO OR THE RELATED STATUTORY FACTS REQUIRING REVERSAL**

A.    Respondent's Loud Silence on *Chevron*

As a preliminary matter, if the Supreme Court dilutes or overturns Chevron this term, reversal would unquestionably be required here because the court below, in abdication of its judicial duty to engage in a bona fide, textual, context-based interpretation of Section 3632(d)(4)(D),[1] denied Giovinco's petition by wholesale deference under the authority of Chevron to the BOP's view on First Step Act time-credit eligibility.  Respondent has not urged otherwise.

As a second preliminary matter, Respondent does not dispute that there has been no notice and comment rule-making here, or any comparable formality of decision-making, and thus no chance other than in their 2241 petitions for the affected prisoners—much less the public at large—to be heard on the "view" of Section 3632(d)(4)(D) that has been afforded, through deference, the force of law. Instead, Respondent tacitly agrees, by not having urged otherwise, that the

---

[1] The Supreme Court recently illustrated precisely the tier of statutory interpretation required but not conducted here. See Pulsifer v. United States, 601 U.S. __, 144 S. Ct. 718 (2024).

1

"interpreting" of the ineligibility statute to which the district court afforded Chevron deference is simply the BOP's expedient practice.

Now to the heart of the matter: regardless of Chevron's future, its role in the decision being appealed and in the growing body of Section 3632(d)(4)(D) jurisprudence on which Respondent relies is critical. As Giovinco has already argued, Giovinco Br. at 13-14, 23-24, the use of Chevron to defend, authorize, and give the force of law to the BOP's manner of determining eligibility for First Step Act time credits signals that these are not mere "administrative" program-eligibility determinations (as, by contrast, they are in the context of the good-time credit and drug rehabilitation programs, see Giovinco Br. at 26-8 and *infra* at 3-5).[2] Rather, the presence of Chevron in the conversation means, as everyone accepts, that the BOP is engaging in the distinctly legislative act of interpreting (or gap-filling) a federal statute claimed to be ambiguous (or silent) on a material matter. That understanding, as Giovinco further argued, in turn forecloses the view that aggregating sentences *in the scenario presented here, as the mode of interpreting the carefully worded time-credit ineligibility provision*, is "administrative" within the meaning of Section 3584(c).

---

[2] "Giovinco Br." refers to Giovinco's principal brief filed in December 2023; "Respondent Br." refers to the brief of Respondent-Appellee filed March 14, 2024.

2

Respondent has not disputed this essential feature of Giovinco's principal brief.

Instead, as if this concession might escape this Court's notice by Respondent's election not to address it, Respondent proceeds to seek to cast the BOP's determination of eligibility for First Step Act time credits as just another exercise in sentence "calculation" or program-eligibility determination that is essentially administrative in nature for the purpose of the aggregation statute, and, in turn, to wholly subordinate the First Step Act's time-credit ineligibility provision to the aggregation statute. But this argument offers little more than a reiteration of the defective analytical scripts of the court below and of the growing body of defective 3632(d)(4) decisions it has spawned rather than a legal defense of the correctness of that body of law.

B.      Respondent Does Not Dispute the Accuracy of Giovinco's
        Account of the Two Other Sentence-Reduction Programs

As Giovinco demonstrated, <u>see</u> Giovinco Br. at 26-28, the aggregation-driven judicial interpretations of First Step Act time-credit eligibility derive from two earlier sentence-reduction programs where, unlike here, Congress expressly authorized the BOP to determine eligibility. Respondent does not dispute the accuracy of this portion of Giovinco's brief, but argues that, "it is not clear why Giovinco believes that distinction changes the analysis." Respondent Br. at 20.

3

To be clear, the distinction matters for two reasons. First, unlike in the First Step Act, where Congress carefully delineated the BOP's role in implementing the recidivism-reduction program, placed the Attorney General in charge, and addressed ineligibility in a discrete, comprehensive provision that does not mention the BOP, in those other two programs Congress expressly placed the matter of program-eligibility entirely in BOP's hands. See Giovinco Br. at 27.

Second, and crucially, what the BOP does in those other two programs *is essentially administrative*: for the Section 3624(b) good time credits program, the BOP assesses prisoner behavior and then does arithmetic; for the section 3621 substance abuse program, the BOP again assesses prisoner personal characteristics (specifically, whether they have a substance abuse problem and whether their treatment is working). These are quintessentially prison-management tasks and, appropriately, the basis of the proposition, recited throughout the defective 3632(d)(4)(D) caselaw, that "[c]ourts have consistently held that sentence calculation by the BOP and the BOP's administration of incentives which reduce the length of a prisoner's term of imprisonment are administrative functions of the BOP subject to § 3584(c)." JA. 35. It is error, however, to rely on this proposition to defend the BOP's rewriting of the ineligibility provision in the First Step Act; the proposition simply takes no account whatsoever of the material difference between the broad discretion Congress granted the BOP to determine eligibility in

4

those earlier programs and the absence of that discretion in the First Step Act time-credit program.

Respondent's final remark on this subject is that Giovinco "points to no court that has identified [the distinction] as a relevant factor in its conclusion." Respondent Br. at 20. Respondent is correct. Giovinco is, however, asking this Court to be the first to do so by declining to adopt the defective reasoning plaguing the extant 3632(d)(4)(D) jurisprudence. Notably, in all but one of the sixteen Section 3632(d)(4)((D) decisions Respondent cites (Respondent Br. at 25, n. 2), the prisoner appeared pro se, and so perhaps it is not surprising that the small but analytically crucial distinction between the earlier sentence-reduction programs and the First Step Act's time-credits was not addressed. Likewise, the lack of counsel in those cases may explain why the analytical tension between what is "legislative" and what is "administrative" is no part of the discussion of the aggregation "for administrative purposes" statute. By contrast, for this appeal, this Court has appointed the undersigned.[3]

---

[3] The one exception, where the prisoner was represented, is Williams v FCI Berlin, No. 22-cv-564-JL, 2023 WL 5961688 (D.N.H. Aug 1, 2023), report and recommendation adopted, 2023 WL 5959740 (D.N.H. Sept. 13, 2023). The Magistrate's R&R reports that counsel argued that section 3584(c)'s "reference to 'administrative purposes' limits the scope of that statute to the BOP's sentence computations, and not to program-eligibility decisions." Williams, 2023 WL 5961688, at *4. While that assertion carries the seed of the administrative-legislative dichotomy advanced here, it does not go far enough because it does not distinguish between the purely administrative eligibility determinations for the

5

C.      Respondent Does Not Dispute Giovinco's Critique of the Other
        Reported §3632(d)(4)(D) District Court Decision in this Circuit

Giovinco expressed the need for this Court to "stem the alarming aggregation tide" in 3632(d)(4)(D) decisions.  Giovinco Br. at 25.  Of note, Giovinco critiqued a decision from a district court in this Circuit as reflecting lawlessness in that it merely quotes a BOP official's declaration and affords it the force of law.  Id. at 26 (discussing the Magistrate Report and Recommendation in Whaley v. Pliler, 22-CV-4680, 2023 WL 7243714 (S.D.N.Y  Nov. 3, 2023)).  Respondent does not address, much less dispute, Giovinco's assessment of Whaley.  Instead, the still not yet adopted Whaley R&R appears as the sixth case in the footnote of sixteen decisions Respondent urges this Court to follow.  Respondent Br. at 26.[4]

---

good-time and drug rehabilitation programs and the legislative nature of interpreting Section 3632(d)(4)(D) in the multiple conviction context.  In any event, the R&R rejected that argument, reasoning that it "finds no support in the statutory language or in any cases concerning similar circumstances," id., quoting a Ninth Circuit decision that stated that the statute "applies to all administrative determinations made by the BOP." Moreno v. Ives, 842 F. App'x 18, 21-22 (9th Cir. 2020). The quoted language from Moreno, of course, does not reflect an understanding of the difference among different program-eligibility determinations; additionally, the sentence-reduction program at issue was drug rehabilitation, not First Step Act recidivism-reduction.  In sum, Williams and Moreno do not contribute to resolution of the issues before this Court.

[4] According to the Whaley docket, both the prisoner's objections to the R&R and the BOP's response to those objections have been filed.

6

The quantity of decisions compiled in this footnote should carry little weight for additional reasons. Of the sixteen, only five are Circuit-level decisions; of those, four are unpublished and without precedential value (the decisions of the district courts in those circuits are merely straightforward applications of or consistent with the Circuit authorities). Finally, none of them presents the fact that strongly tips the equities in Giovinco's favor, namely: unlike Giovinco, none of those prisoners has fully served the term of the crime that renders him ineligible for time-credits, and so in none of them was there a basis for claiming, as Giovinco does here, that what the BOP and Respondent seek to justify as mere administrative aggregation is the further penalization of Giovinco for that ineligible conviction.

D.      Respondent Misreads this Court's
        Decision in *United States v. Martin*

To punctuate its assertion that Giovinco failed to explain the significance of the distinction drawn between the First Step Act's recidivism-reduction program and other sentence-reduction programs, Respondent cites this Court's decision in United States v. Martin, 974 F.3d 124, 136 (2d Cir. 2020), for the proposition that "this Court, *in the context of the FSA*, has identified that 'administrative purposes' are those pursuant to which the BOP administers a sentence, including the application of sentence credits." Respondent Br. at 20-21 (emphasis is Respondent's).

7

Martin does not support Respondent's position.  First, as this Court is aware, the First Step Act was sweeping, omnibus legislation with *many, distinct* sections. Martin involved the portion of the First Step Act—its Section 404(b)—that made the Fair Sentencing Act of 2010 (which had reduced the sentencing disparity between powder- and crack-cocaine convictions) retroactive and that authorized prisoners to seek reduction of their sentences on the affected narcotics counts of conviction (referred to in the statute as "covered" offenses).  974 F. 3d at 131-32. Although this Court in Martin speaks generally of "the First Step Act" throughout its decision, the case has nothing to do with the recidivism-reduction time credits at issue here (nor, for that matter, compassionate release nor any other branch of the First Step Act).

More importantly, Martin, properly read, actually supports Giovinco's position here that not all aggregating of sentences is administrative for purposes of Section 3584(c).  It was the defendant who invoked the aggregation statute as a basis for relief; convicted of multiple offenses, the defendant had fully served the time on his "covered offense" and sought to have the reduction due him under Section 404(b) credited to other components of his sentence.  Rejecting the effort to obtain "substantive" relief through the aggregation statute, this Court spoke powerfully on the integrity and substantive distinctness of each component of a multi-count sentence for purposes of eligibility for a statutory sentencing

8

reduction, see 974 F.3d at 134-37 (captioned, "The Nature of Sentences") and on the limited scope of "administrative purposes" within the meaning of the aggregation statute. See id. at 136-37 (emphasizing the phrase "*for administrative purposes*"). Relevant here, the Court emphasized that the crime-specific nature of the Congressionally-created sentencing reduction (relief only for the narcotics counts that qualified as "covered offenses") was controlling; the administrative aggregation and arithmetic that happened on BOP's books was an entirely different enterprise. See id. at 138-39. The Court explained, in the circumstances there, that "administrative aggregation of sentences . . . cannot create an authorization for retroactive relief that is neither expressly stated within nor implied by the statute." Id. The same logic applies here: nor can administrative aggregation *eliminate* a form of sentencing relief expressly created by statute. In both scenarios, as this Court stated in Martin, *"[t]o do so would erroneously treat the sentences as an undivided, aggregated whole*." Id. at 139 (emphasis added).[5]

---

[5] Peyton v. Rowe, 391 U.S. 54 (1968) likewise does not support Respondent's view that administrative aggregation trumps substantive rights. To the contrary, the Supreme Court in Peyton overturned its earlier, unduly "doctrinaire approach" to the "in custody" requirement of the habeas statute and held that defendants sentenced to multiple terms of imprisonment, including consecutive terms, could bring constitutional challenges to the those yet-to-be-served terms. Peyton, 391 U.S. at 57-58. The case does not involve "administrative" aggregation under Section 3584(c). Rather, the Court emphasized the need for "swift judicial review on unlawful restrains on liberty." Id. at 63. Acknowledging that the phrase "in custody" as used in the habeas statute "is not free of ambiguity," id. at 65, the Court held that the defendants were "'in custody in violation of the Constitution' if

E.  The Raw Materials for Bona Fide Statutory
Interpretation—Text and Context—Are Not Disputed

It cannot be overstated that, from the outset of this litigation, Respondent has misread Section 3632(d)(4)(D).  See Giovinco Br. at 15 (reporting that, in its opposition to the petition in the court below, Respondent argued that Section 3632(d)(4)(D) "categorically delineates which inmates are never eligible to earn FSA credits").  With that in mind, it is important that here, Respondent does not dispute the basic textual analysis Giovinco advances, which is premised on the straightforward grammar, simplicity, and clarity of the phrase "is serving a sentence for."  See Giovinco Br. at 14-17.  Likewise, Respondent does not dispute the accuracy of the broader statutory context Giovinco sets forth, id at 17-20, nor does it even suggest that the court below properly took account of these features of the First Step Act.

Instead, the thrust of Respondent's argument appears to be that the *only* relevant context is the aggregation statute.  Although Respondent does not express its position in the same language it used in opposition to the petition in the district

---

any consecutive sentence they are scheduled to serve was imposed as the result of a deprivation of constitutional rights."  Id. at 64-65.  The Court emphasized that "[t]his approach to the statute is consistent with the canon of construction that remedial statutes should be liberally construed."  Id. at 65.  The two lessons of Peyton are (i) to the extent the definition of ineligibility in the First Step Act is "not free of ambiguity," it should be a Court and not the BOP who interprets it, and (ii) because the First Step Act unquestionably *is* a remedial statute, the rule of lenity requires that is be construed liberally in favor of those it was intended to benefit.

10

court, substantively, its position has not changed: it would have this Court read "is serving a sentence for" as meaning "is or was ever convicted of." That simply cannot be the case. Congress certainly knows the difference between convictions and sentences and between prior and current convictions, as even a cursory review of the United States Code shows. A considered hard stop, to appreciate that not all aggregation is administrative, coupled with a bona fide *text*- and *context*-based analysis that respects grammar and that prioritizes Congress's intentions in enacting the statute before it, see, e.g., Pulsifer, 144 S. Ct. at 719 et seq. (illustrating precisely this tier of statutory interpretation), will support the awarding of First Step Act time credits to Giovinco. See also Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 n. 9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent").

### REPLY POINT II

### DETERMINING ELIGIBILITY AS CONGRESS INTENDED, BY DISCRETE OFFENSE, WOULD NOT BE IMPRACTICABLE

Respondent's other principal objection to Giovinco's interpretation of 3624(d)(4)(D)—that it would make no practical sense, Respondent Br. at 13-14—is a non-starter. What Respondent purports to cast as some sort of complex task or undue burden—"the BOP would have to look at each discrete offense committed by an inmate, establish start and end dates for each separate sentence, and

11

determine eligibility for each separate sentence," id. at 14—is (a) hardly extraordinary and (b) actually well within what is touted throughout the current 3632(d)(4)(D) caselaw as BOP's traditional function and expertise: calculations relating to sentencing.

The fact that this process would also entail, for some prisoners, the starting and pausing of time-credit-accrual periods is also no justification for simply disregarding the clear Congressional intent evident in the ineligibility provision. The recidivism-reduction program that Congress sought to implement through Title I of the First Step Act is ambitious, and, throughout the many undisputed provisions of its comprehensive blueprint, already requires a great deal from the BOP, most of it at the level of highly individualized, prisoner-specific behavioral and performance assessments and credit accrual calculations. What Respondent would cast as exceptional or aberrational individualized time-credit-accrual record-keeping is actually quite in synch with the prisoner-specific nature of the administrative duties Congress has looked to the BOP to discharge. Indeed, even the accrual concept is already part of the time-credit record-keeping in that, although a prisoner earns these credits while in custody, the credits accumulate and are not applied toward a reduction in sentence until that prisoner is moved to "prerelease custody or supervised release."  18 U.S.C. §3632(d)(4)(C).

12

## CONCLUSION

For all of the foregoing reasons and those set forth in Giovinco's principal brief, this Court should reverse the district court's ruling, hold that Giovinco is eligible for time-credits under the First Step Act, and grant such other and further relief it may deem just and proper.


Dated:      Bay Shore, N.Y.
              April 4, 2024

Respectfully submitted,


/s/ John R. Quinn
JOHN R. QUINN

13

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies pursuant to FRAP 32(g)(1) as follows:

1.      This brief complies with the type-volume limitation of FRAP 32(a)(7)(B), as modified by Second Circuit Rule 32.1(a)(4)(B), because it contains 2967 words exclusive of those parts of the brief exempted by FRAP 32(f).

2.      This brief complies with the typeface requirements of FRAP 32(a)(5)(A) and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 2023 in Times New Roman 14-point type.


Dated: Bay Shore, N.Y.
April 4, 2024

/s/ John R. Quinn
JOHN R. QUINN

14